THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* FRANCISCO RIVERA FLORES, Defendant and Appellant.

No. Cr-62-239. Decided February 12, 1963.

312

*Héctor Martínez Colón* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Juan A. Faría, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Defendant Francisco Rivera Flores, a diabetic for seven years, testified that he left his work at 4 p.m. driving his motor vehicle known as jeep; that he stopped at a *cafetín* on Reina Street, and that between that hour and 6 p.m. he took several large beers. When he left the *cafetín* because he was not feeling well and as he reached the jeep, he felt "something so painful that I had to remain bent over the wheel." The evidence does not establish whether such sudden illness was produced by alcoholic intoxication or by a diabetic shock.

Police lieutenant Teodoro Rovira testified that that afternoon he was traveling by Capitán Correa Street corner of Reina Street and certain persons who were there called him. The lieutenant saw a parked jeep. When he got out of the automobile in which he was traveling he approached defendant who was manipulating the jeep; that defendant was inside the jeep, "seated in the car, swaying in the jeep, his eyes were red, and when he talked to me he smelled strongly of liquor" (Tr. Ev. 11) ; that when Lieutenant Rovira arrived

and parked his automobile behind the vehicle in which defendant was sitting, defendant's vehicle moved back about two feet and touched the bumper of Lieutenant Rovira's automobile, "it only touched it" (Tr. Ev. 15). The judge asked whether the car had moved back or whether defendant had reversed, and Lieutenant Rovira reasserted that the car had moved back. Lieutenant Rovira had already testified that the motor of defendant's vehicle was in motion because "when I arrived at the place and parked behind the vehicle which he was driving, shortly before he had started the motor" (Tr. Ev. 12). The evidence in the case, reduced to its exact juridical content, therefore, shows that the act of "driving" the vehicle, if he did, consisted in moving back two feet and the act of "operating" the vehicle consisted in starting the motor.

Clarification of the offensive act is important because, since appellant had been arrested for *driving* a motor vehicle on a public road under the influence of intoxicating liquor, the only error assigned by appellant is having found him guilty, "without establishing, and it was so concluded by the court, that defendant-appellant *was driving* a motor vehicle under the influence of intoxicating liquor." The reasoning of the trial court appears in two different statements—one, in rendering judgment, and the other, in denying a motion for reconsideration.

In the first, the trial judge stated as follows: Section 5-801 of the Vehicle and Traffic Law provides that it shall be unlawful for any person who is under the influence of intoxicating liquor to drive or operate (it says two things) any motor vehicle. That is the offense. To drive or to operate any motor vehicle under the influence of intoxicating liquor.

"To be under the influence of intoxicating liquor is not an offense for the purposes of the Traffic Law. The offense consists in being under the influence of intoxicating liquor and driving or operating a motor vehicle.

314

"To operate a motor vehicle, in the opinion of this court, is to start the motor, manipulate the vehicle in such a way as to be a part of its function. To drive it means to conduct the vehicle on a road or street, what we commonly call to drive a vehicle.

"However, one may operate a parked vehicle and not drive it. That is why the law provides two alternatives."

In the second, the judge stated as follows: "The court will deny the motion for reconsideration on the ground that in the opinion of the court two different offenses are not involved. It is not necessary to present different elements of proof ... There are two violations of the provisions of the Vehicle and Traffic Law which call for the same evidence."

■■■ According to WHARTON, there are two different offenses: "In cases arising under statutes which prohibit the driving of a motor vehicle by a person who is intoxicated or who is under the influence of intoxicating liquor, the term 'driving' has been construed as requiring that the vehicle be in motion in order for the offense to be committed. Merely starting the motor of a car, or attempting to start it, does not constitute 'driving' within the terms of a statute which prescribes an offense in the terms of driving while intoxicated, unless the statute makes an attempt to drive the equivalent of driving.

"The movement of a vehicle by an intoxicated person need not be extended, however, in order for it to be construed as a 'driving' of the vehicle, and it has been held that the moving of a vehicle only a few feet by a driver who was intoxicated at the time was a violation of a statute prohibiting driving while intoxicated ...

"Although statutes which prescribe the offense of 'driving' while intoxicated and those which prescribe the offense of 'operating' a motor vehicle while intoxicated exist for the same purpose, that is, protecting the users of the highways against the hazards of vehicles controlled by persons under

the influence of intoxicating liquors, a distinction between the terms has nevertheless been recognized by some courts. 'Operating' has been construed to include acts not within the meaning of the term 'driving.' Merely starting the engine of an automobile has been held to constitute an operation of such automobile within the meaning of a statute prohibiting the operation of a motor vehicle by a person under the influence of intoxicants. [4] Indeed, some courts have held that any manipulation of the mechanical or electrical agencies of a motor vehicle, which manipulation, alone or in sequence, would set in motion the motive power of the vehicle, is an 'operation of the vehicle' within the meaning of the statute prohibiting the operation of a motor vehicle by an intoxicated person, at least, if there is an intention to move the car.

"The slightest operation of the machine by an intoxicated person constitutes a violation of the statute. Thus, when the accused, while intoxicated, merely operated the car in an effort to extricate it from a ditch, while the driver was on the outside attempting to push it therefrom, a conviction for operating an automobile while in a state of intoxication in violation of statute was sustained. A conviction for 'operating' has also been sustained when the defendant was merely trying to free the automobile from a log on which it was stuck. Steering a car as it is being towed to a place of repair has been held to constitute 'operating' within the meaning of such a statute.

"As in cases arising under statutes prohibiting the 'driving' of a motor vehicle by a person under the influence of intoxicating liquor, some of the cases arising under statutes prohibiting the 'operation' of a motor vehicle by an intoxicated person hold that to constitute an operation of a vehicle within the meaning of such statute it is necessary for the vehicle to be in motion. Clearly, one is not to be said to be either operating or driving an automobile if he is merely sit-

ting in the vehicle when it is not in motion." 3 WHARTON, Criminal Law and Procedure 166–68, §§ 993–94 (Lawyers' Co-op. Pub. Co., 1957).

There are in the information, the theory applicable to this case, and the evidence presented, certain circumstances which compel us to consider it as a special case. Section 5–801 of Act No. 141 of July 20, 1960 (Sess. Laws, p. 408) provides: "(a) It shall be unlawful for any person who is under the influence of intoxicating liquor *to drive* or *operate* any motor vehicle . . ." (Italics ours.) The information filed against appellant reads as follows: "Because the said defendant. . .unlawfully, willfully, maliciously, and criminally was driving the motor vehicle. . . along a public road under the influence of intoxicating liquor."

■■ The rule seems to be that where a statute denounces as criminal two or more separate and distinct acts or transactions, enumerated therein in the disjunctive—namely, establishing an alternative by the use of the disjunctive expression *or*, whereby one is bound to choose one of them—an information may include all of them conjunctively and the defendant found guilty of either one. See, for example, *People* v. *Adorno*, 81 P.R.R. 504, 519–20 (Pérez Pimentel, 1959). However, it is generally held to be a fatal variance to charge disjunctively, in the words of the statute, if the disjunctive in the averment on which the information is based leaves it uncertain which of the several alternatives is meant—4 WHARTON, *op. cit. supra* at 630–31, § 1798 —or whether the offense may be committed in either way, and on the manner in which it is committed depends the inference of criminal intent: *People* v. *Rosado*, 76 P.R.R. 362, 364 (per curiam, 1954). This agrees, to a certain extent, with § 77 of our Code of Criminal Procedure, 34 L.P.R.A. § 132, p. 49, which provides: "*Two or more offenses* may be alleged in the same information or complaint each in a separate count, if the said offenses are of a like or similar nature

or have arisen from the same action or transaction or from two or more actions or transactions related to each other or constituting parts of a common plan."

The legislative history of § 5–801 shows that the word "drive" was first employed as the only punishable act; subsequently it was thought of an amendment by including the words "or has physically under his control a motor vehicle," and lastly, it was decided to substitute those words by "to operate": 13-III Journal of Proceedings 1409, and 13-V op. cit. 2276. This being so, the term "drive" and the term "operate," included as such in the last wording of § 5–801, mean two distinct offenses in the disjunctive, according to Wharton's citation—State v. Williams, 185 S.E. 661, 662 (Schenck, 1936)—or two offenses arising from the same transaction, according to § 77 of our Code of Criminal Procedure. Assuming that there were different modalities of the same offense, the implied disjunctive in both modalities, according to the words of the statute, would still create confusion since there is no lexico-logical differentiation capable of separating one action from the other within the semantic chiaroscuro, and according to the rule stated by Wharton it would be objectionable. See State v. Helms, 102 S.E.2d 241, 242–43 (Bobbitt, 1958). Appellant having been charged with only one of the offenses or modalities of the offense, it is unquestionable that appellant would have accomplished nothing by requesting a bill of particulars.

■■ This being so, we must consider the term "drive" as the offense or modality distinct and separate from the offense which comprises the act of moving the vehicle from one place to another, and the term "operate" as the offense or modality distinct and separate from the offense which comprises the act of manipulating a motor vehicle within the same place. State v. Sweeney, 31 U.S.L. Week 2363 (1-29-63). The manner of presenting the information would

be to determine on which of the two modalities of the offense the prosecution evidence will rest.

■■ Considering the evidence now, the same is not satisfactory under any of the two offenses or modalities of the offense unless we were willing to sanction in our case law the strict criterion that the movement of a car two feet backward without reversing constitutes the offense of "driving." As to the modality of operating, the evidence is rather inconsistent. Police lieutenant Rovira testified that he saw appellant's jeep parked and that when he approached it defendant started the motor. The description of defendant's pitiful condition rules out any possibility that he could co-ordinate any movement with the rapidity or intention of fleeing suggested by his testimony. On the contrary, it buttresses defendant's version that when he felt sick he bent over the wheel of his vehicle, an act which he performed long before Lieutenant Rovira drew near.

The judgment appealed from will be reversed.